UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 15-61 |
| VERSUS | * | SECTION: "E" (5) |
| WENDY ERVIN | * | |

* * *

## FACTUAL BASIS

If this matter were to proceed to trial, the United States would introduce the following facts with relevant and admissible testimony and exhibits:

On April 20, 2010, an explosion and fire occurred on the Deepwater Horizon, an oil rig in the Gulf of Mexico where British Petroleum (BP) had been drilling a well. Thereafter, BP established the Gulf Coast Claims Facility (GCCF) to administer, mediate, and settle certain claims of individuals and business for losses incurred as a result of the Deepwater Horizon incident. The GCCF began receiving and processing such claims on August 23, 2010. The GCCF required any individual filing a claim to submit valid documentation as proof of loss or reduction in earnings due to the oil spill.

Donald Williams, Jr. would testify that he met Lisa Crinel when he was employed as a Certified Nursing Assistant at Extraordinare Home Health Services in the 1990s. Mr. Williams would testify that he graduated from Southern University of New Orleans in 2004 after majoring in accounting. In 2007, Mr. Williams moved to Georgia and opened a business as an accountant. Throughout the years he kept in touch with Crinel when he was invited to events and parties.

Mr. Williams would testify that in about November 2010, he had a telephone conversation with Lisa Crinel about filing a BP claims for her employees at LACE. Crinel asked Mr. Williams to assist in filing those claims. Mr. Williams would testify that at the time he was requested to assist in the BP claims he had no previous experience in filing such claims.

Mr. Mark Dyer would testify that at the time Lisa Crinel reached out to Donald Williams to assist in the BP claims, he was fully engaged as the accountant for Abide Home Care Services and LACE. Mr. Dyer would testify that he was familiar with the process for filing BP claims and that Lisa Crinel never approached him about doing BP claims or to supply any employment information for any of her LACE or Abide employees.

Mr. Williams would testify that he prepared claims for three individuals at LACE according to instructions by Lisa Crinel – Clara Aitch, Wendy Ervin and Wilneisha Harrison, Lisa Crinel's daughter. Mr. Williams would testify that he knew of Clara Aitch as Lisa Crinel's assistant at Abide and that Wendy Ervin also worked at Abide. Mr. Williams would testify that neither Ervin nor Aitch worked at LACE. Mr. Williams would also testify that at the time of the BP disaster, he knew that Wilneisha Harrison was attending school in Jackson, Mississippi, and had not been impacted in any way by the BP disaster. Mr. Williams would testify that he researched the BP claims website to determine what type of documentation was necessary to file the BP claims, including check stubs indicating a reduction in pay timed with the BP disaster.

The Government would introduce into evidence two check stubs purporting to document LACE payroll checks to Clara Aitch. The first, dated April 30, 2010, indicates a total paycheck in the amount of $1,732 for 80 hours of work at LACE and year-to-date income in the amount of $15,588. The second, dated May 14, 2010, indicates a total paycheck in the amount of $860.59 for 39.75 hours of work at LACE.

2



The Government would introduce into evidence two check stubs purporting to document LACE payroll checks to Wendy Ervin. The first, dated April 30, 2010, indicates a total paycheck in the amount of $1,470.40 for 80 hours of work at LACE and year-to-date income in the amount of $13,233.60. The second, dated May 14, 2010, indicates a total paycheck in the amount of $758.18 for 41.25 hours of work at LACE.

Mr. Williams would testify that he falsely created the four paycheck stubs described above with the assistance of Lisa Crinel because he knew that there were no actual paycheck stubs for Aitch and Ervin.

The Government would also introduce into evidence two letters purporting to be from LACE, The Reception Place, both dated November 18, 2010. The letters are addressed to the Gulf Coast Relief Fund and one is signed by Clara Aitch and the other is signed by Wendy Ervin. The letters both state:

> I have been employed with LACE, The Reception Place for 15 months. Until the disaster occurred, I had been able to work full time with LACE due to the volume of parties/weddings that were booked.
>
> Since the disaster, our hours have been cut drastically, which in turns reduces my take home pay.
>
> After hearing about the Relief Fund, I decided to request assistance. It is my prayer that you concern the employees of LACE, The Reception Place for any type of funding you have.
>
> If you are in need of any additional information, please do not hesitate to give me a call.

Federal Bureau of Investigation Special Agent Krista Bradford would testify that on March 25, 2014, she executed a search warrant on the Abide Home Care business. Special Agent Bradford would testify that the above referenced letters were found on Lisa Crinel's computer.

3



Special Agent Bradford and Mark Dyer would also testify that there are no checks from LACE payable to Aitch or Ervin.

Donald Williams would also authenticate photographs of the drivers' licenses and social security cards of Ervin and Aitch that were provided to him by Lisa Crinel's staff and submitted as documentation in the false BP claims. Williams would also identify emails between him and Lisa Crinel where they discuss the need for the above identification.

Copies of the checks payable to Aitch and Ervin as a result of the BP claims would be introduced into evidence:

| Check No. | Date | Payee | Amount |
|---|---|---|---|
| 00460141 | 10/20/11 | Wendy Ervin | $5,000 |
| 00163875 | 12/06/10 | Wendy Ervin | $12,300 |
| 00163867 | 12/06/10 | Clara Aitch | $13,500 |
| 00471044 | 12/09/11 | Clara Aitch | $5,000 |

A check drawn on the account of Clara Aitch dated December 14, 2010, payable to and endorsed by Lisa Crinel would also be introduced into evidence to establish the $5,000 kickback Aitch made to Lisa Crinel after she received her first BP payment in the amount of $13,500. Ervin would testify that when she received her first BP check, Crinel went with Ervin to the bank where she took a portion of Ervin's proceeds.

Special Agent Artie DeLaneuville from the United States Department of Health and Human Services, Office of Inspector General, would testify about an interview he had with Clara Aitch. Agent DeLaneuville would testify that Aitch stated she had no losses from the BP disaster but that Crinel asked her and Wendy Ervin for copies of their driver's licenses and social security cards so that she could file BP claims on their behalf. Aitch stated she may have signed a letter prepared by Lisa Crinel to be sent to the BP claims center. After the BP claims were filed, Crinel forwarded the BP claim number and instructed Aitch to call the claims center to check on the

4

claim. Crinel instructed Aitch to write her (Crinel) a check in the amount of $5,000 because she had already taken care of Donald Williams. Aitch would authenticate the $5,000 check she wrote to Lisa Crinel.

                                                        KENNETH ALLEN POLITE, JR.
                                                        UNITED STATES ATTORNEY

                                                        PATRICE HARRIS SULLIVAN
                                                        Assistant United States Attorney

WENDY ERVIN
Defendant
Date: 04.22.2015

NICOLE BURDETT/
JASON ROGERS WILLIAMS
Counsel for Defendant
Date: 4-22-2015