1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA
2

3     ****************************************************************

4     UNITED STATES OF AMERICA,
                                         CRIMINAL DOCKET NO. 15-61
5                 PLAINTIFF,             SECTION E
                                         NEW ORLEANS, LOUISIANA
6     V.                                 Monday, April 20, 2015
                                         3:00 A.M.
7     LISA CRINEL, et al

8                 DEFENDANTS.

9
      ****************************************************************
10

11               TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
                 HEARD BEFORE THE HONORABLE SUSIE MORGAN
12                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19    OFFICIAL
      COURT REPORTER:   TERRI A. HOURIGAN, CRR, RPR
20                      CERTIFIED REALTIME REPORTER
                        REGISTERED PROFESSIONAL REPORTER
21                      500 POYDRAS STREET, ROOM B-275
                        NEW ORLEANS, LOUISIANA  70130
22                      (504) 589-7775
                        Terri Hourigan@laed.uscourts.gov
23

24    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.
25

```
 1    APPEARANCES:

 2    FOR THE GOVERNMENT:        U. S. ATTORNEY'S OFFICE
                                 BY:  PATRICE SULLIVAN, ESQ.
 3                                    SHARAN LIEBERMAN, ESQ.
                                      ANDRE LAGARDE, ESQ.
 4                                    JANET CHAUVIN, PARALEGAL

 5    FOR THE DEFENDANT:         CHAFFE MCCALL LLP
      Lisa Crinel and Abide      BY:  CHARLES D. MARSHALL, III, ESQ.
 6                                    WALTER F. BECKER, JR., ESQ.
                                 1100 Poydras Street, Suite 2300
 7                               New Orleans, Louisiana  70163

 8
      FOR THE DEFENDANT:         SPEARS & SPEARS (via telephone)
 9    Wilneisha Harrison Jakes   BY:  IKE SPEARS, ESQ.
                                 1631 Elysian Fields Avenue
10                               New Orleans, Louisiana 70117

11
      FOR THE DEFENDANT:         LAW OFFICES OF ROBERT HABANS, JR.
12    Henry Evans                BY:  ROBERT N. HABANS, JR., ESQ.
                                 10843 N. Oak Hills Parkway
13                               Baton Rouge, Louisiana 70810

14                               BARKLEY & THOMPSON, LLC
                                 BY:  JAN K. FRANKOWSKI, ESQ.
15                               1515 Poydras Street, Suite 2350
                                 New Orleans, Louisiana  70112
16
17    FOR THE DEFENDANT:         FEDERAL PUBLIC DEFENDER'S OFFICE
      Threasa Adderley          BY:  VALERIE WELZ JUSSELIN, ESQ.
18                               500 Poydras Street, Room 318
                                 New Orleans, Louisiana 70130
19
20    FOR THE DEFENDANT:         CAPITELLI & WICKER
      Michael Jones              BY:  BRIAN J. CAPITELLI, ESQ.
21                               1100 Poydras Street, Suite 2950
                                 New Orleans, Louisiana 70163
22
23    FOR THE DEFENDANT:         HAILEY MCNAMARA, HALL,
      Paula Jones                LARMANN & PAPALE
24                               BY:  RICHARD T. SIMMONS, JR., ESQ.
                                 One Galleria Boulevard, Suite 1400
25                               Metairie, Louisiana 70111
```

```
1    APPEARANCES:

2

3    FOR THE DEFENDANT:          CRULL, CASTAING & LILLY
     Shelton Barnes             BY:  EDWARD J. CASTAING, JR., ESQ.
                                601 Poydras Street, Suite 2323
4                               New Orleans, Louisiana 70130

5
     FOR THE DEFENDANT:          LAW OFFICES OF MICHAEL PAUL CIACCIO
6    Jonathon Nora              BY:  MICHAEL P. CIACCIO, ESQ.
                                320 Huey P. Long Avenue
7                               Gretna, Louisiana 70053

8
     FOR THE DEFENDANT:          JOHNSON LAW OFFICES
9    Cary Payton                BY:  GARRON MATTHEW JOHNSON, ESQ.
                                     BRANDEN VILLAVASO, ESQ.
10                              829 St. Charles Avenue, Suite 309
                                New Orleans, Louisiana 70130

11

12   FOR THE DEFENDANT:          LAW OFFICES OF JERRY SETTLE
     Sheila Mathieu             BY:  JERRY SETTLE, ESQ.
13                              1465 North Broad Street
                                New Orleans, Louisiana 70124

14

15   FOR THE DEFENDANT:          LAW OFFICES OF MILES SWANSON
     Evelyn Odoms               (via telephone)
16                              BY:  MILES W. SWANSON, ESQ.
                                4000 Bienville Street, Suite A
17                              New Orleans, Louisiana 70119

18
     FOR THE DEFENDANT:          LAW OFFICES OF H. THOMAS MURPHY
19   Suprenia Washington        BY:  H. THOMAS MURPHY, III, ESQ.
                                1029 Milan Street
20                              New Orleans, Louisiana 70115

21

22

23

24

25
```

```
 1   APPEARANCES:

 2   FOR THE DEFENDANT:        CAPITAL DEFENSE PROJECT OF
     Zellisha Dejean          SOUTHEAST LOUISIANA (via telephone)
 3                            BY:  KIMYA M. HOLMES, ESQ.
                              3801 Canal Street, Suite 400
 4                            New Orleans, Louisiana 70122

 5
     FOR THE DEFENDANT:        GLASS & REED
 6   Caren Battaglia          BY:  JOHN WILSON REED, ESQ.
                              3015 Magazine Street
 7                            New Orleans, Louisiana 70115

 8
     FOR THE DEFENDANT:        PIERCE & BIZAL
 9   Sheila Hopkins           BY:  GARY WILLIAM BIZAL, ESQ.
                              639 Loyola Avenue, Suite 1820
10                            New Orleans, Louisiana 70113

11
     FOR THE DEFENDANT:        LAW OFFICES OF ROBERT C. JENKINS
12   Eleshia Williams         BY:  ROBERT C. JENKINS, ESQ.
                              631 St. Charles Avenue
13                            New Orleans, Louisiana 70130

14
     FOR THE DEFENDANT:        LAW OFFICES OF STEPHEN J. HAEDICKE
15   Verinese Sutton          BY:  STEPHEN J. HAEDICKE, ESQ.
                              639 Loyola Avenue, Suite 1820
16                            New Orleans, Louisiana 70113

17
     FOR THE DEFENDANT:        LAW OFFICES OF DENNIS WAYNE MOORE
18   Clara Aitch              BY:  DENNIS WAYNE MOORE, ESQ.
                              3801 Canal Street, Suite 400
19                            New Orleans, Louisiana 70119

20
     FOR THE DEFENDANT:        JASON ROGERS WILLIAMS & ASSOCIATES
21   Wendy Ervin              BY:  NICOLE E. BURDETT, ESQ.
                              607 St. Charles Avenue, Suite 300
22                            New Orleans, Louisiana 70130

23   ALSO PRESENT:            PHILIP DORE, LAW CLERK

24

25
```

1                        **P-R-O-C-E-E-D-I-N-G-S**

2

3                          April 20, 2015

4                       (COURT CALLED TO ORDER)

5                          (3:15 p.m.)

6          THE CASE MANAGER:  All rise.

7          THE COURT:  Mr. Spears.

8          MR. SPEARS:  Yes.

9          THE COURT:  Okay.  I just wanted to be sure you could

10    hear us.

11          MR. SPEARS:  I can hear you, Judge.  Good afternoon,

12    thank you for having me participate by phone.

13          THE COURT:  All right.  Because of the nature of the

14    case and the number of defendants, we're going to plan on

15    having regular status conferences in this case.

16          I will set up a schedule.  I want you all to put it on

17    your calendars.  I want you to be here in person if your client

18    is still involved in the case so that we don't have to, you

19    know -- I don't want you to be late, and I don't want you to be

20    on the phone.  I want you to be here.

21          So, put it on your calendars, and we will go from

22    there.

23          So, I have got -- I tried to get organized so we would

24    know what we needed to talk about today.

25          I guess the first thing I wanted to address -- well,

1    let me ask you all, are all of the defendants out on bond?

2         MS. SULLIVAN:  Yes.

3         THE COURT:  That is correct.  And do all of the

4    defendants have counsel here today.  Is everybody represented,

5    do we know?

6         MS. SULLIVAN:  I believe so.

7         THE COURT:  Okay, good.  Am I correct that the

8    government has not provided any discovery to the defendants at

9    this point?

10        MS. SULLIVAN:  That is correct.  Would you like me to

11   explain that process?

12        THE COURT:  Yes.

13        MS. SULLIVAN:  I sent a letter out to all of the

14   counsel, which I'm doing via e-mail so that we can save trees,

15   and I can't fit them all on one page, either, saying that we

16   were going to use this cloud-based discovery system.

17        My paralegal, Janet Chauvin, is here, so that she can

18   add to those wherever I say something is incorrect.

19        We thought this was going to be ideal because of the

20   amount of documents we had for us to be able to download it and

21   then each counsel would upload it, and we sent out the

22   instructions to do that.

23        Ms. Chauvin and our entire IT department has discovered

24   that the download is taking an extraordinary amount of time.

25   We could get over that, but then we created an account acting

1   as though we were defense counsel, and it was taking a

2   ridiculous amount of time for them to upload it.

3            So it's 400,000 documents.

4            MS. CHAUVIN:  It's 300,000 documents -- 400,000 --

5            THE COURT:  Say that again.

6            MS. CHAUVIN:  It's 4,200 files for 300,000 PDF pages.

7            MS. SULLIVAN:  So, what we determined today is that we

8   are going to put it on a thumb drive.  Each of those -- it will

9   be what, 64?

10           MS. CHAUVIN:  64 gigs.

11           MS. SULLIVAN:  64 Gigs thumb drive.  And it will take

12  us about an hour per thumb drive, which is we think too long

13  for 20 different thumb drives.  So we are going to see if we

14  can outsource it to a company so that we can get that going.

15           THE COURT:  So you will provide the thumb drive to the

16  company.  Each defendant can go to that company and get the

17  thumb drive; is that it?

18           MS. SULLIVAN:  No.  We will provide the thumb drive to

19  each defendant.  We hope that we will get an IT company to

20  outsource it so it won't take so long to do each thumb drive.

21           MR. LAGARDE:  We need to get a company who can burn

22  multiple CDs at once, that has the technology to do a bunch of

23  at once.

24           MS. SULLIVAN:  That being said, that is just the

25  electronically-scanned documents.

1          The FBI office has boxes and boxes of documents that I

2     think I also explained in the letter that they can make

3     arrangements with the special agent to go see when they want.

4          THE COURT:  Those are hard copies?

5          MS. SULLIVAN:  Yes, Your Honor.

6          THE COURT:  They are different from the ones that will

7     be on the thumb drive?

8          MS. SULLIVAN:  Not all of the time.

9          For instance, the individual patients listed in the

10    indictment, those patient charts are going to be scanned.  They

11    are scanned.

12         But they are also in the FBI files, the actual, you

13    know, the actual patient charts.

14         I think there was 400 boxes of just patient charts, so

15    the bulk of the stuff that is at the FBI is mostly just patient

16    charts, and they're all inventoried and easy to find.

17         MR. MARSHALL:  I have a question, Patrice.  The hard

18    copy documents that we see are not necessarily overlapping, if

19    you don't clarify.

20         MS. SULLIVAN:  If there are patients in the indictment,

21    then they are scanned.

22         MR. MARSHALL:  Patient, meaning the indictment -- the

23    six that were listed, specifically?

24         MS. SULLIVAN:  Correct.  There are going to be other

25    patients.

1          When you see the electronic files that we have scanned,

2     they are very easy to understand, for instance, like Abide.

3          We will have -- we got Kinnser documents, electronic

4     patient files.

5          They are all going to be listed.  You know, it has

6     "Abide patient chart" and the patient's name and search

7     warrant.

8          If it's a document from one of the doctors that we got

9     through a grand jury subpoena, it will say, "Dr. Evans, patient

10    chart, search warrant for grand jury subpoena."  So they are

11    all identified.

12         THE COURT:  On the document itself?

13         MS. SULLIVAN:  On the list of scanned documents, the

14    discovery directory.

15         MR. MARSHALL:  Judge, I think I have talked about it --

16         THE COURT:  Please speak up a little louder so

17    everybody can hear.

18         MR. MARSHALL:  So as I talked about this with counsel

19    for the government before, I believe that some of the hard

20    documents that were seized include document orders that were

21    not in the Kinnser software because Abide had not uploaded them

22    yet.

23         So I'm just concerned we're not going to get everything

24    in the production because of the hard copy not being produced.

25         MS. SULLIVAN:  Well, that is true.  So let me explain

1    what we have done because of that.

2           We learned recently that that happened.

3           And so, the boxes taken that day at the search warrant,

4    they would go to somebody's office -- maybe somebody's desk,

5    and they would have -- there would be a bunch of 485s or

6    position orders there, along with other stuff.

7           So what we have been doing is going through every

8    single box that is not purely patient charts, and we are

9    putting a tag on it that shows where that document originated,

10   and we're putting them all in alphabetical order.

11          MR. MARSHALL:  Okay.

12          MS. SULLIVAN:  So if there is a patient, Patrice

13   Sullivan -- now this is a timely process, because we're having

14   to go through, like, 60 boxes.  So if there is a patient,

15   Patrice Sullivan, you will be able to go to a folder that is

16   alphabetical, you will look under "Sullivan," and every

17   document that was seized from Abide will be there.

18          If it has anything to do with Patrice Sullivan it will

19   be there.

20          THE COURT:  Does that address your concern?

21          MS. SULLIVAN:  Including the documents.

22          MR. MARSHALL:  In that sense that stuff is being

23   organized, but as far as our access to the document, what you

24   are saying is we can have it arranged to have those documents

25   copied?

1    MS. SULLIVAN:  Yes.  It is a time-consuming process.

2    There are boxes that are filled just like you would have a box

3    of reams of paper, that is how dense some of these are.

4        MR. MARSHALL:  Certainly, we are probably going to file

5    motions to sort of figure out who are the patients at issue in

6    this case.  That may give us an idea of what documents we need

7    to go and copy from the government.

8        MS. SULLIVAN:  When you see the download, it's going to

9    be pretty obvious.  I mean, because you can -- I will explain

10   it to you when you see it.

11       THE COURT:  When he gets the thumb drive?

12       MS. SULLIVAN:  Yes, ma'am.

13       THE COURT:  Because both the thumb drive and the

14   documents from the FBI, you are giving them some kind of

15   inventory so that they can know what they have?

16       MS. SULLIVAN:  Uh-huh.

17       THE COURT:  Are things that -- are there Bates numbers

18   on the documents that identify where they were seized, you

19   know, who they were seized from?

20       MS. SULLIVAN:  Your Honor, each document that is

21   scanned is Bates numbered.  And the listing of all of the files

22   will say, if it's a search warrant box, it will show where that

23   box was, or if it's a grand jury, it will show the grand jury

24   number.

25       So it fairly well identifies the origin.

1        THE COURT:  All right.  Then you have got Ms. Chauvin

2    who is going to be available to help people if they have any

3    questions about it?

4        MS. SULLIVAN:  If she is still sane.

5        THE COURT:  So when will this all be done?

6        MS. SULLIVAN:  I wanted to be able to tell you today.

7    They estimated that 51 minutes, and I'm going to have to do a

8    purchase order to, I guess, get a contract -- to see if we can

9    get a commercial person to do it.

10        So, a couple of days, hopefully.

11        THE COURT:  Yes.  All right, and then the documents

12    that are at the FBI, are those ready now?

13        MS. SULLIVAN:  Except I'm still going through those

14    boxes to try to put those in order.

15        I do, like, generally two days a week at the FBI

16    putting those in order, because every document has to be

17    stamped with its original location, and we have been putting

18    stickers on it, alphabetize it, and then put in to the

19    different --

20        THE COURT:  So what is your best guess about when you

21    think you will be through with that process?

22        MS. SULLIVAN:  I hope that would be two weeks.

23        Now, the other thing is that when we searched Abide,

24    and like I said, there is about 400 boxes of purely patient

25    files.  One box will have 40 different patients, maybe, and

1   each of those files represents an episode of home health.

2        So if you are looking for all of the patients for

3   Patrice Sullivan, you might have to go into 16 different boxes

4   to find this episode, that episode, that episode.

5        So, in the instance that the ones that are in the

6   indictment, what we did is we pulled all of the patient files

7   from all of the boxes and created a new piece of evidence.

8   That is why you will know who it is, because it will be

9   aggregated.

10       MR. MARSHALL:  We think you have done that correctly.

11  But I will just add that we think that needs to be done for

12  every patient that is actually at issue in this case, but I

13  would agree with that process.

14       THE COURT:  Is that what you are saying?  That is what

15  you have done?

16       MS. SULLIVAN:  We have done it for the ones that are

17  mentioned in the indictment.

18       To do it otherwise, that would take weeks.

19       THE COURT:  What you are saying is there are other

20  patients who the government says these things were done with

21  respect to, but they are not mentioned in the indictment?

22       MR. MARSHALL:  That's correct, Your Honor.

23       MS. SULLIVAN:  But it is findable.

24       Now if you say you want patient, Patrice Sullivan,

25  Christa Bradford is going to go through and pull every one.

1      MR. MARSHALL:  I anticipate there being a motion on

2  this, Judge, but to the extent that there are patients in

3  addition to the ones named in the indictment, I think they are

4  required to give us thousands of documents that related to

5  patients at issue in the case, the same way they are doing for

6  the six in the indictment.

7      THE COURT:  Have you identified the other patients

8  besides the six that are in the indictment?

9      MS. SULLIVAN:  There are people that we are looking at

10  and they are all scanned.

11      I mean, if we have any interest, we scan it.

12      MR. CAPITELLI:  I didn't hear that.

13      MS. SULLIVAN:  If we have any interest for the patients

14  we scan the documents, and they are available.

15      MR. CAPITELLI:  What interest -- does that mean a

16  patient?

17      MS. SULLIVAN:  If I'm looking at a particular patient,

18  if -- I mean, sometimes I don't know what the interest is, but

19  I scan them.

20      THE COURT:  And the fact that you scan them, that means

21  it's going to be in the electronic production --

22      MS. SULLIVAN:  That's correct.

23      THE COURT:  -- by patient name?

24      MS. SULLIVAN:  Yes, ma'am.

25      THE COURT:  So if there is anybody that is in the

1   scanned production by name, then these attorneys should know

2   that's a patient you are looking at to see if there was some --

3        MS. SULLIVAN:  Correct.  We're still investigating.  We

4   expect to supercede and it will be adding patients.

5        So it's a blueprint where we're going.

6        THE COURT:  And so --

7        MR. CAPITELLI:  Do you have a time frame on that?

8        MS. SULLIVAN:  It would have been sooner had I not

9   realized about the patient orders not being in Kinnser, so now

10  I have had to divert to an incident over there to try to get

11  that ready.

12       THE COURT:  And you said there is going to be a

13  superseding indictment?

14       MS. SULLIVAN:  We're still investigating, so it could

15  happen.

16       THE COURT:  Do we have any time frame on that?

17       MS. SULLIVAN:  The agent is going on vacation in

18  Argentina in May, so it will be sometime after that.

19       MR. CASTAING:  Sometime after what?

20       MS. SULLIVAN:  Sometime after May.

21       THE COURT:  You may add additional defendants.

22       MS. SULLIVAN:  That is correct.

23       THE COURT:  So that would change all of the time

24  frames.

25       Anybody have any questions so far?

1          MR. CAPITELLI:  If I could ask one thing.

2          THE COURT:  Speak up.

3          MR. CAPITELLI:  I know when the FBI collects all of the

4   documents, there are big rooms, they keep a pretty detailed

5   inventory.

6          I think it would be helpful if we could get a copy of

7   the FBI's inventory of the documents they have, rather than us

8   going out there.

9          MS. SULLIVAN:  That is going to be available.

10         I will have to talk to the agent, whether or not that

11  is something they will give out.

12         Particularly, like with a patient -- the inventory is

13  going to say "Box 1B 41 patient files."  And those are

14  specifically inventoried.  The ones with just patient files,

15  those are all inventoried, which, of course, I can give you.

16         The rest are the boxes that had things other than

17  patient files.

18         It will be a very generic miscellaneous document,

19  manuals, some patient records.  So I will have to see what they

20  have.

21         MR. CAPITELLI:  Okay.

22         THE COURT:  In terms of an inventory?

23         MS. SULLIVAN:  Yes, ma'am.

24         THE COURT:  You will let these lawyers know?

25         MS. SULLIVAN:  Generally, we would let it be in the

1    office in the exhibit room with it.

2         I don't know.  I will have to talk to the team about

3    whether or not that is something that can be done -- it's not

4    my job.

5         THE COURT:  So there will be a room where the lawyers

6    can go in and look at the documents, and they can also request

7    copies?

8         MS. SULLIVAN:  They will have to bring their own

9    copier, because we are talking about, you know, hundreds of

10   thousands, and everybody is retained except for a couple.

11        So, we have already done 300 pages of documents.  So

12   anything that they want, we have created a space for a copy

13   machine.

14        THE COURT:  If there is -- can they use a third-party

15   service?

16        MS. SULLIVAN:  If they come -- the documents cannot

17   leave the evidence room, but yes, they can bring somebody in

18   there.

19        THE COURT:  Have you all thought about --

20        MS. BURDETT:  I just want to say I have used

21   third-party services before.  The FBI is accommodating with

22   that.

23        THE COURT:  You all may want to get together, the

24   defense counsel, and get one third party to scan them or

25   something and then you all deal with it.

1          It just doesn't make sense to have a bunch of different

2    third-party services.  It might be less expensive for you to

3    think about doing one, and then each one of you can deal with

4    that third party, and say, "But I want copies of these," you

5    know, and not anything else.

6          MR. MARSHALL:  That makes sense, Judge.  I think I'm

7    satisfied as long as, you know, the patients that are really at

8    issue, we're going to get those documents produced.  And then

9    like you say, we can cooperate with defense counsel for the

10   other records, perhaps.

11         THE COURT:  Try to not, you know, spend any more money

12   than you have to on that, because I will be looking at your

13   budgets and bills later.

14         So, I don't want to see that everybody spent $10,000

15   when you could have had one person do it, and it would have

16   been a lot more efficient, one third party do it.

17         MR. CASTAING:  Is there going to be a master index of

18   all of the government documents that we're getting?

19         MS. SULLIVAN:  Yeah.  I wish I would have brought it.

20   It's a very detailed list.  It's very self-explanatory.

21         Janet has spent a massive amount of time having a list

22   that -- it's searchable.  It's OCR, isn't it?  Is it OCR?

23         MR. CASTAING:  That would be for the thumb drive and

24   the hard copy?

25         MR. LAGARDE:  We were discussing about potentially

1   making that available ahead of time outside.

2        MR. CASTAING:  Eventually, it's possible that we will

3   have two indexes, one for electronic, and the other hard copy.

4        MS. SULLIVAN:  Right.  Depending, like I said, the FBI

5   index, I have a very detailed listing of every patient chart in

6   those 400 and so boxes.

7        But beyond that, it's a generic listing of what is in

8   those boxes.  It will be a box that says "manuals, employee

9   files."

10        MR. CASTAING:  Indexed in detail?

11        MS. SULLIVAN:  It will be patients, yeah, and the

12   scanned documents.

13        THE COURT:  Any other questions or comments about what

14   you have heard thus far?

15        Let's talk about the protective order.  I know we have

16   one letter with some comments and concerns from Mr. Frankowski.

17   Where is he?

18        MR. FRANKOWSKI:  Right here, Your Honor.

19        THE COURT:  Okay.  All right.  So have you had a chance

20   to communicate and work out any issues you had?

21        MR. FRANKOWSKI:  We have, Your Honor, if I may.

22        MS. SULLIVAN:  I have got this.  That's the only thing.

23        MR. FRANKOWSKI:  We have discussed the language of the

24   protective order, the concerns I expressed in my letters with

25   Ms. Sullivan both last week and earlier today.

1          I think we're down to one remaining issue that we're

2   not fully in agreement yet on.

3          That concerns whether if the attorneys wish to discuss

4   a patient's records with the patient, whether that particular

5   patient is permitted to view the records; that is Point No. 1.

6          And No. 2, whether they are required to sign the

7   acknowledgement.

8          In the red-lined documents that, I believe,

9   Ms. Sullivan has given to Your Honor, there is additional

10  language that I have asked her to include in the proposed

11  protective order which would permit a patient to view his or

12  her own records and would also exempt from the requirements of

13  signing an acknowledgement, the very patient whose records

14  those are.

15         MS. SULLIVAN:  I just don't see why it's necessary.

16  It's a patient's record.  Ordinarily, a patient wouldn't have

17  to sign anything to discuss his own record.  I think it's

18  over -- it's just completely not necessary.

19         THE COURT:  Are you all saying the same thing that the

20  patient shouldn't have to sign anything?

21         MS. SULLIVAN:  I say the patient shouldn't have to

22  sign.  He is saying that he does want the patient to sign.

23         MR. FRANKOWSKI:  You know, Your Honor, my concern right

24  now is that the protective order the way it's sets up, it

25  limits by category the persons that may view the documents.

1          A patient is presently, under Ms. Sullivan's draft, not
2     included in that list of people.
3          THE COURT:  Who can review it?
4          MR. FRANKOWSKI:  Who can review it.
5          It seems to me that they should be expressly included.
6     The protective order should say one of the categories of
7     persons permitted to review the records is the patient or the
8     patient's representative or anyone else authorized by that
9     patient to view his or her own records, because the privilege
10    and the privacy concerns are really the patient's.
11         So long as the patient wants to view them or have a
12    family member view them or have anybody else view them, they
13    should be in control of their own document.
14         And then with respect to acknowledgement, Your Honor,
15    the language we have proposed would exclude the patient from
16    having to sign an acknowledgement to be permitted to view his
17    or her own records.
18         MS. SULLIVAN:  And my thing is, I think it's
19    overregulating something that is already that patient's right.
20         THE COURT:  But if it is, then you don't have any
21    objection to saying it?
22         MS. SULLIVAN:  Well, I just don't see that it's
23    necessary, and I don't see the point.
24         THE COURT:  Well, I guess because they want to be sure
25    they are not violating the protective order, and you know, we

1    have said it on the record, here.

2          But since you don't have any objection, then I want you

3    to change it to say that.  It's not a big deal.

4          MR. FRANKOWSKI:  Thank you, Your Honor.

5          THE COURT:  All right.  So you have worked that out.

6    The other issues you had -- did anybody else have any concerns

7    about the protective order?

8          MR. MARSHALL:  No.

9          THE COURT:  All right.  So will you submit a revised

10   version of it, and I will put that in place and that will be

11   the first step in your getting this production to everybody, I

12   assume.

13         And then we have talked about what you are going to

14   produce, and a general timeline.

15         Does anyone else have other issues about -- about, you

16   know, the production?  What you have described that you are

17   going to produce everything that the government has at this

18   point?

19         MS. SULLIVAN:  Oh yes, Your Honor, yes.

20         THE COURT:  Okay.

21         MS. SULLIVAN:  I mean, I have got maybe some summary

22   exhibits that I'm working on that I'm not ready to do that kind

23   of stuff.

24         THE COURT:  Right.

25         MS. SULLIVAN:  Yes.

1           THE COURT:  All of the --

2           MS. SULLIVAN:  Not 302s, not reports of investigation,

3   any evidentiary items.

4           THE COURT:  Does anybody have any questions about

5   things you think they might have that you haven't heard?

6           MR. MARSHALL:  I would say to the extent it should be

7   immediately produced.

8           MS. SULLIVAN:  We understand.

9           MR. CAPITELLI:  Judge, I issued a discovery letter --

10          THE COURT:  I can't hear you.

11          MR. CAPITELLI:  I issued a discovery letter to

12  Ms. Sullivan, and I anticipate there are things she is not

13  going to provide.

14          I anticipate a motion practice over some documents that

15  it is the government's position they don't have to turn them

16  over.

17          I'm looking at her response.  So I will determine what

18  motions are going to be filed, so I anticipate that coming up.

19          THE COURT:  But it's things other than what you

20  described, like your summary exhibits and 302s?

21          MS. SULLIVAN:  Correct.

22          THE COURT:  There are other documents?

23          MS. SULLIVAN:  Yes, ma'am.  Like things that -- he gave

24  a very specific -- a very long list of very specific items,

25  some of which are not -- don't have any support that I think

1   under the law.

2        THE COURT:  But are they things you have or you don't

3   have?

4        MS. SULLIVAN:  Both.

5        Some of the things almost requires me to -- here is an

6   example:  If there have been any disclosures of grand jury to

7   experts, he wants to see the motion that was filed, that kind

8   of stuff.

9        Well, there is no basis for him getting that kind of

10  information.

11       Everything under *Brady*, *Giglio*, *Jencks*, Rule 16, of

12  course, is open.

13       The other thing is I'm not giving *Giglio* -- I'm not

14  giving NCIC reports of defendants to other defendants at this

15  point.

16       I mean, you will get Lisa Crinel's NCIC, but you won't

17  get, you know, some other defendants until *Giglio*, which is the

18  same time as *Brady*.

19       MR. CAPITELLI:  That's where we disagree.  I don't

20  think the government can hold *Brady* until the Friday before

21  trial.

22       MR. MARSHALL:  For example, I would be offering on

23  advice of counsel, if you have 302s that are relevant, I would

24  consider those *Brady* if they support it.  Because it is a

25  defense, if it will be exculpatory, and if you got information

1    on that, I want it.

2              THE COURT:  Okay.  So it sounds like --

3              MS. SULLIVAN:  Somebody has got to give me an idea what

4    all these are, before it's *Brady*.

5              MR. MARSHALL:  That one is pretty clear.  That has been

6    in motions.

7              MS. SULLIVAN:  We have also asked for reciprocal

8    discovery, and we have been since before indictment.

9              If you are going to rely on advice of counsel, then I

10   get to have counsel's notes.

11             MR. MARSHALL:  I don't think it's a ground for

12   withholding *Brady*.

13             MS. SULLIVAN:  I know my *Brady* obligations.

14             THE COURT:  So it sounds like we're going to have some

15   discovery issues, which is shocking.

16             I have a question, is this Ms. Crinel, and is it

17   Mrs. Jakes or Mr. Jakes?

18             MR. MARSHALL:  It is Ms. Jakes' daughter.

19             THE COURT:  Okay.  I wondered if they were related.

20             You know, I was thinking about how long this trial

21   would be, if we had to try everybody, but I guess we're not at

22   the point where we would know that, or really how long it's

23   going to take you all to get ready, because you haven't seen

24   any of the documents yet.

25             So I might -- I'm thinking maybe I will do some

1  deadlines but it may -- it seems like it's premature to set a

2  trial date at this point.

3          Maybe we will discuss that in a few months when you all

4  have seen some of the documents, and if you are going to do

5  this superseding indictment, you know, we need to have the

6  lawyers for those defendants in the room as well.

7          MR. LAGARDE:  Just to be clear, there was a default

8  notice of trial that went out, just so you are aware of that.

9          THE COURT:  No, I'm not.

10         Well, there is no way.

11         All right.  So I will do a scheduling order and set

12  some motion deadlines and set another status conference in

13  couple of months probably, and then maybe you all would have

14  had a chance to get your feet wet and figure out a little bit

15  more about the case.

16         MS. SULLIVAN:  Could I bring up a couple of things?

17         THE COURT:  Yes.

18         MS. SULLIVAN:  In the event there are superseding bills

19  of information filed that are related to this case, do you want

20  me to direct them or do what I need to do to get them directed

21  to this Court?

22         THE COURT:  Yes.

23         MS. SULLIVAN:  Or let it go random -- this Court?

24         THE COURT:  Well no, I guess I thought if there was one

25  that would come to me, if it didn't come to me in the

1   beginning, I think it would be transferred.

2        MS. SULLIVAN:  Okay.

3        THE COURT:  I'm not sure how they handle that in the

4   clerk's office.

5        MR. LAGARDE:  It doesn't automatically happen on the

6   criminal side, as it does with a notice of related action on

7   the civil side.

8        We can certainly make the notation and bring it to the

9   Court's attention.

10       THE COURT:  If the clerk's office doesn't do it, let us

11  know, because it doesn't make sense for the superseding

12  indictment to go to somebody else.

13       MS. SULLIVAN:  It would be superseding bills of

14  information for people not presently from it, perhaps, or that

15  kind of thing.

16       The other thing, Mr. Spears represented Lisa Crinel, so

17  I have told Mr. Spears that I think he has a conflict because

18  he's now representing Elisha Jakes.

19       So I was wondering if that is something we could

20  address on the next motion date?

21       THE COURT:  So you are filing a motion to disqualify

22  Mr. Spears?

23       MS. SULLIVAN:  At least, bring it up.

24       THE COURT:  I guess you need to be asking for

25  something.

1     MS. SULLIVAN:  Yes.

2     THE COURT:  And then you set it, and, you know, give

3 Mr. Spears, so he will have enough time to respond, if you put

4 it on the next -- I'm not sure what date that is.

5     MS. SULLIVAN:  Would that go to here or the magistrate?

6     THE COURT:  Let's see, I don't know.  I haven't had one

7 before in a criminal case, so I don't know.

8     Do you guys know?

9     MR. BECKER:  Not discovery, it's not discovery.

10     THE COURT:  It's not discovery.  So I guess it will

11 come here, and if I will refer it to the magistrate, I can.

12 Let's see who is the magistrate?  Judge North, okay.

13     Anything else?

14     MR. MARSHALL:  One other item, Your Honor.

15     If I file a few motions under seal, and my

16 understanding is that the other defense counsel do not have

17 access to them, and I think at the time I was required to serve

18 counsel of record, but there was no counsel of record, so I

19 wanted to address that with the Court.  Perhaps the easiest way

20 for them to get access is through PACER?

21     THE COURT:  Well, I'm only aware of one that is pending

22 now that is under seal.

23     MR. MARSHALL:  Correct.  Maybe there were two under

24 seal filed.

25     THE COURT:  Right.  Those are under seal, and I will

 1    figure out how to deal with that, so you don't need to do

 2    anything on it.

 3         I'm waiting for the government's response and then I

 4    will decide how do deal with it.

 5         MR. MARSHALL:  Okay.

 6         MR. LAGARDE:  Out of an abundance of caution, I just

 7    note a couple of things that you brought up if he wanted to

 8    file under seal.  If there is ultimately a hearing on it, I'm

 9    not aware of there being a motion yet to seal the hearing or

10    the proceedings, so I would assume the same considerations are

11    at issue, but I just want to bring that to the Court's

12    attention because we could have a disparity there, sealed

13    pleadings.

14         THE COURT:  If I have a hearing then the pleadings are

15    going to be unsealed and the hearing will be unsealed.

16         MR. LAGARDE:  Yes, ma'am.

17         THE COURT:  Anything else?

18         MR. HABANS:  Some of the defendants share an interest

19    in some of the motions filed, because our clients have been

20    subject to search warrants and the same issues arising out of

21    irregularities in the issuance of the search warrant, if

22    proven, may bear upon our clients' interests as well.  And we

23    would like to be able to keep up and intervene, even, if we

24    thought it necessary.

25         THE COURT:  Well, you know, I think the government's

1    response is due April 28th.

2           If I decide that I don't need to have a hearing, and

3    I'm considering not unsealing, I'm going to let you all know

4    that so you can make your concerns known.

5           If I decide to unseal it and have a hearing, then it

6    will be a moot point.

7           So that's why I'm just -- if I decide not to unseal it,

8    I'm going to give you all an opportunity to comment on that and

9    object before I put it to bed.

10          I thought I would just wait and see how it turned out.

11   It may not be necessary for you to object.

12          MR. HABANS:  Okay, Your Honor.

13          MR. CASTAING:  Excuse me.  What are you saying, Your

14   Honor?

15          THE COURT:  The government hasn't filed its opposition

16   to the motion to suppress.

17          MR. CASTAING:  Has not?

18          THE COURT:  Has not.  It's due April 28th.

19          MR. CASTAING:  Does the government have any objection

20   to showing it to counsel for the defense?

21          I may want to adopt it because it's very similar to my

22   situation, but I don't want to adopt something I haven't seen.

23          THE COURT:  The motion to suppress?

24          MR. CASTAING:  Yes.

25          THE COURT:  You have seen part of the motion to

1   suppress, and then two filings related to the motion to

2   suppress.

3           MR. CASTAING:  I don't have that.

4           THE COURT:  There is a motion to suppress filed by Lisa

5   Crinel that is unsealed.  It's in the record.

6           MR. CASTAING:  Is it the one we have been talking

7   about?  As of this morning, it was all under seal.

8           MR. MARSHALL:  The original motion was filed under

9   seal.  I supplemented the two other sealed filings.

10          MR. CASTAING:  I got the first one.  I don't have the

11  other ones.

12          THE COURT:  Right.  The first one is on CMECF.  So you

13  know there is a motion to suppress.

14          There were two supplemental memos filed that are under

15  seal.

16          The government has not responded to the motion to

17  suppress.

18          When I get the government's response, I'm going to

19  decide whether I need to have an evidentiary hearing.

20          If I have an evidentiary hearing, everything is going

21  to be unsealed, the record, and if you all and other defendants

22  want to file something, you can, or if you have similar issues,

23  we will do it all, you know.  It will all be taken care of

24  then.

25          If I decide I don't need an evidentiary hearing, and I

1  think I'm not going to unseal what I have been provided, then I

2  will let you all know, so you can complain and tell me why I

3  need to unseal it, and you know --

4          MR. CASTAING:  Okay.

5          THE COURT:  So, I will give you a chance.

6          MR. CASTAING:  If there is an error created with your

7  denial, I want to have the benefit of adopting and --

8          THE COURT:  Right.  I don't want to do anything without

9  giving you all a chance to say.  I just think it might not be

10  necessary, so I thought I would wait and see.

11          MS. SULLIVAN:  Just so you know --

12          THE COURT:  It might not be necessary for you to object

13  because I might say, you know, we're going to have a hearing

14  and it is unsealed, and then you will get what you want.

15          MS. SULLIVAN:  We're going to file as much out of the

16  seal as possible, and only the things that directly relate to

17  those two supplemental ones.

18          THE COURT:  Absolutely.

19          MR. LAGARDE:  There won't be overlap.  We're not going

20  to be repeating ourselves, so we have to segment our response

21  to that part of it that is sealed.

22          THE COURT:  Right.

23          MS. SULLIVAN:  That's cross-referenced.

24          THE COURT:  That's what I want you to do at this point.

25          MR. FRANKOWSKI:  Your Honor, I don't wish to confuse

1    things by bringing this up, but when Mr. Marshall filed his

2    first supplemental motion and submitted an order to Your Honor

3    permitting to file under seal, the order that Your Honor signed

4    did specifically instruct Mr. Marshall to serve counsel with a

5    copy of the materials that he was serving under seal.  That has

6    already been signed by Your Honor.

7            I just wanted to later on know that's already out

8    there.

9            THE COURT:  I don't recall that.

10           Did you do that?

11           MS. SULLIVAN:  No.  There wasn't counsel.

12           MR. MARSHALL:  I'm not sure there was counsel at the

13   time.

14           MR. LAGARDE:  I think it is staggering -- they made an

15   initial appearance that populated.

16           MR. MARSHALL:  I have always been operating -- I should

17   talk to you first, Your Honor.

18           THE COURT:  We will clarify this minute entry, that you

19   are not going to do that right now.

20           MR. MARSHALL:  Okay.

21           THE COURT:  You know, we will deal with it.  It won't

22   be that long before we get the government's response.

23           Anything else?

24           MR. CASTAING:  Your Honor, are you going to set dates

25   today?

1      THE COURT:  Well, I'm thinking I would go back and, you

2  know, in my office and think about it.

3      But, you know, obviously, you all -- it's going to take

4  some time for you all to do motions.

5      You have got to get these documents, you have got to

6  have some time to look at it.  So I'm not going to do anything

7  -- set any deadlines rapidly, because I realize it's going to

8  take you all some time to look at these documents.

9      MR. CASTAING:  We're all on deadlines that are set by

10  the magistrate when we came in prior.

11      THE COURT:  I need to find out what those are.  What

12  deadlines?

13      MS. JUSSELIN:  We have fourteen days to file special

14  pleadings.

15      It's the standard language that Magistrate North will

16  say, that you have 14 days from the date of the arraignment to

17  file special pleadings, that would be probably be covered by

18  Your Honor's scheduling order.

19      THE COURT:  We're going to set out some more specific

20  deadlines.

21      I think this is going to be more complicated than the

22  average bear.

23      MR. MARSHALL:  Judge, this is my final question:  I do

24  have other motions besides the motion to suppress set for the

25  6th.

1          I have not yet requested oral argument, but I intend

2     to, and I just wanted to bring that back to your attention with

3     the motion to sever.  We have got a motion to dismiss, and a

4     motion to suppress.

5          I think that that is all of them.

6          I have an appeal of the magistrate's decision as well.

7          THE COURT:  Okay.  So let me figure out what I want to

8     do with respect to all of those.

9          We will pick a date, and you can have more oral

10    argument.

11         Now we may -- if we have -- I guess, the issue is do we

12    want to do yours now as opposed to waiting for other people,

13    you know, to file motions, and I guess there is no reason to

14    wait.

15         MR. LAGARDE:  Your Honor, even for scheduling, if I

16    may, if you are entertaining, perhaps, an untimely motion for

17    oral argument, I'm not sure if we're talking about affecting

18    the hearing date which could affect our opposition dates as

19    well.

20         THE COURT:  No.  I want your opposition on April 28th.

21         MR. LAGARDE:  I'm not talking about the big picture

22    issue, but some of these other issues you are talking about,

23    perhaps, requesting oral argument on -- I thought I understood

24    you to say, that if you granted oral argument that might bump

25    the dates?

1      THE COURT:  Well, that is what I'm thinking, if I grant

2  oral argument on your motion to sever or your motion to

3  dismiss, other defendants may be filing similar motions and the

4  issue I was thinking about, do I want to wait and do all of

5  those motions at the same time?

6      MR. MARSHALL:  I'm okay with that, with just the

7  understanding that, you know, the financial need of my client

8  is real as expressed in the motion, so I won't want to put it

9  off for too long.

10      THE COURT:  Yes.

11      MR. CASTAING:  May I make a suggestion, Your Honor.

12      Maybe you all talked about it, maybe Patrice could

13  certainly schedule an order with all of the dates that we might

14  need.  We have done this in many other cases, send them out to

15  the defendants to weigh in on them and see those are dates we

16  all can live with, with the final date being the trial date,

17  which we don't have right now.

18      In other words, it's like a civil scheduling order, but

19  we do them in criminal cases.

20      THE COURT:  Well, I do scheduling orders in criminal

21  cases with all of the deadlines, and usually with the pretrial

22  conference and a trial date.

23      I don't know about that for this one, because in one

24  way it would be good to get on everybody's calendars so that,

25  you know, we don't have problems with getting it scheduled.

1        On the other hand, I'm not sure when to put it on, you

2   know, I don't know if it's going to take you six months,

3   nine months, 12 months, yeah, two years.

4        I just don't know how long -- I wouldn't know right now

5   where to put it -- how far out.

6        So I don't know, would you want to respond to that?

7        MS. SULLIVAN:   Yeah.   I was sort of going by what you

8   said that it's really sort of premature to put anything to a

9   time.

10        Now a lot of these things, some of these motions could

11   be dispositive of as far as pleas, and that kind of thing.

12        We already have several pleas.   I mean, we have two

13   this week, I believe.

14        So once some of that stuff shakes out, I think it will

15   give everybody a better idea of what to expect timing-wise.

16        THE COURT:   Right.   You know, it may be that when you

17   all have a chance to see some of the documents, I mean, you

18   need to see them, you need to talk to your clients about them,

19   and, you know, evaluate your case at that point.

20        But you don't have any basis to do that at this point.

21   You don't have the documents.

22        So I wanted you all -- now that everybody is

23   represented, I wanted to get you all in a room, you know, let's

24   start the discussion.

25        But do I know exactly how this is going to go right

1    now?  No, obviously.

2          But we got to get some dates, you know, get things

3    started, and I think getting the production done, is, you know,

4    a big part of that.

5          MS. SULLIVAN:  Yes, ma'am.

6          I'm going to basically say that you ordered us to do

7    it, like, yesterday, even if you didn't, so that I can get my

8    people to move, because it is a bid process.

9          So I'm going to do what I can.

10         THE COURT:  Okay.

11         MS. SULLIVAN:  But we just learned this wasn't going to

12   work -- this cloud thing.

13         THE COURT:  So I do want you to do that because I think

14   everybody is waiting to get that information.

15         Anything else?

16         THE COURT:  Okay.

17         MR. SPEARS:  Judge, this is Ike Spears.  I couldn't

18   hear clearly.  Was the government given --

19         THE COURT:  Okay.

20         THE REPORTER:  I couldn't hear that.

21         THE COURT:  Was the government given a motion to file

22   -- a deadline to file a motion to disqualify.

23         And I think that is a good idea, because he needs to

24   know whether he's going to represent his client or not.

25         So how long -- is ten days enough for you to do that?

1         MS. SULLIVAN:  Absolutely.

2         THE COURT:  All right.  So they're going to file it

3    within ten days.  And Mr. Spears, how long do you need to

4    respond?

5         MR. SPEARS:  If I could have a week, at least, to file

6    this, Judge, that would be sufficient.  It should be more than

7    enough time.

8         THE COURT:  All right.  That is good, okay.  So we will

9    include those dates so we can get this resolved.

10         MR. HABANS:  Could I suggest, if I could, if Your Honor

11    wanted to pick the next date for us to convene like this, so

12    that we can all hold that date and make sure we don't have a

13    conflict develop.

14         THE COURT:  Yes.  That is a good idea.

15         MR. HABANS:  Thank you.

16         THE COURT:  Let's see around June 20th, which is on a

17    Saturday.

18         How about Friday, June 19th?

19         MS. SULLIVAN:  It's my birthday.  Are you all going to

20    bring, me gifts?  I don't think so.

21         MR. HAEDICKE:  I'm scheduled to be in a federal trial

22    that day.

23         THE COURT:  It's here?  It starts when?

24         MR. HAEDICKE:  Monday, the 15th.

25         THE COURT:  Well, we don't want to wait too long.

1          MR. HAEDICKE:  How about the 12th, before?

2          MR. MARSHALL:  Some of this we can talk about it, but I

3     do have two weeks this summer that I am out.

4          THE COURT:  When is that?

5          MR. MARSHALL:  The other lawyers probably do as well.

6          THE COURT:  When are those dates?

7          MR. MARSHALL:  The week of the June 22nd is one, and

8     the week of July 4th, I think.

9          THE COURT:  All right.  Let's do this:  There was some

10    day you were telling me, I wanted to go after but I'm just -- I

11    think, well maybe I was thinking of whether you are going to

12    have superseding bills or superseding indictments and whether

13    that would be done by June 19th.

14         MS. SULLIVAN:  I certainly hope so.

15         THE COURT:  So let's do Friday, June 19th.  We will,

16    you know, we will deal with it, let's say at two o'clock?

17         MS. SULLIVAN:  I have that free.  I don't know about my

18    co-counsel, but if there is one of us that can't be here, is

19    that going to be a problem?  I mean, there are three of us.

20         THE COURT:  Yeah.  That would be fine.

21         MS. SULLIVAN:  Just if somebody is going to be trial

22    counsel.

23         THE COURT:  Instead of 2:00, let's do it at 3:00 in

24    case I'm in trial, I will have to do it at a break.  Friday,

25    June 19th at three o'clock.

1    I will just -- all I'm going to do right now is if

2    there are any deadlines between now and then, and I will set

3    those, and we are going to talk about deadlines when we come

4    back together.  And I think, you know, you all will know a lot

5    more at that point.

6        MR. MARSHALL:  Judge, did you say you were going to

7    move the May 6th setting or not?

8        THE COURT:  You know, I don't think we had set any

9    arguments.  That is just a submission date which tells them

10   when their opposition is due.

11       So, you know, I hardly ever have oral argument on that

12   day, if we have it.  I will let you know and we will know if we

13   will have oral argument and when.

14       MR. LAGARDE:  I wasn't trying to ask -- I wasn't trying

15   to squirm for more time.  I was trying to clarify.

16       THE COURT:  Of course.  They call it a hearing date,

17   but it's just really the date that it's submitted.

18       MR. MOORE:  Your Honor, I don't think there is anybody

19   in this room -- but I don't have to look at the documents to

20   know that I'm going to be in the trial with BP, so we're all

21   going to probably join to set it, but it's not related to

22   anybody.

23       THE COURT:  Who represents the two other -- aren't

24   there a couple of other people?  Aitch and Ervin.

25       MR. LAGARDE:  It is spelled A-i-t-c-h.

1        MR. MOORE:  The only one that is on the BP -- I think
2   all of us are going to want to join the motion to sever.
3        THE REPORTER:  You are going to have to speak up.
4        MR. MARSHALL:  He said that he believes everybody would
5   want to join the motion to sever that I file.
6        MR. HAEDICKE:  That's true.
7        THE COURT:  Okay.  All right.  Now I want to note on
8   the record that Marian Floyd, Kimya Holmes, and Miles Swanson
9   -- are they here?
10       MR. LAGARDE:  No, Your Honor.
11       MR. SWANSON:  This Miles Swanson.  I'm on the phone,
12  and Attorney Holmes is on the phone as well.
13       THE COURT:  How about Marian Floyd?
14       MS. SULLIVAN:  I thought it was just Mr. Spears on the
15  phone.
16       THE COURT:  I did, too.  Did you all join late?
17       MS. HOLMES:  Yes.  I actually was appointed on the case
18  on April 9th, and I was told that notice went out on
19  April 2nd, so I was not in the e-mail for the order that went
20  out.
21       My office was notified but that's why I'm a little
22  late.
23       THE COURT:  How about Mr. Swanson, how about you?  Did
24  you come in late?
25       MR. SWANSON:  I joined a little bit late.

1          THE COURT:  Say that again?

2          MR. SWANSON:  I joined a little bit late.

3          THE COURT:  And then Marion Floyd, is that a woman or

4    man?

5          MS. SULLIVAN:  Marion Floyd is a man.

6          THE COURT:  Is he on the phone?

7          All right.  So we're going to make sure that he's on

8    the list of people who get notice.

9          If you all know him, tell him the next time I set a

10   status conference, he needs to be here.

11         And the people who are on the phone, I realize maybe

12   you got late notice of this, but you need to get on early, and

13   when you come on the phone, you need to tell me you came on the

14   phone.

15         Understand?

16         MS. HOLMES:  Yes, Your Honor.

17         MR. SWANSON:  Yes, Your Honor.

18         THE COURT:  All right.  So maybe Marion Floyd who

19   represents Edwards is the only person who is not here.

20         MS. SULLIVAN:  Yes.

21         THE COURT:  All right.

22         MS. SULLIVAN:  I'm sorry, I thought everybody was here.

23         THE COURT:  Does anybody else know of anybody who is

24   missing?  We thought everybody is here.

25         All right.  I know this is as clear as mud to you, and

1    it's clear as mud to me, too, but we will work our way through

2    it.

3            So is there anything else we need to talk about today?

4            MR. HABANS:  No, Your Honor.

5            THE COURT:  All right.  Thank you all for coming today.

6            If you need to visit in the courtroom, we don't have

7    anything else this afternoon in here, so feel free, if you need

8    to talk to each other or whatever, to take that opportunity to

9    do so.

10           MR. MARSHALL:  Thank you for your time.

11           MS. SULLIVAN:  Thank you, Your Honor.

12

13                          *    *    *

14

15                   REPORTER'S CERTIFICATE

16          I, Terri A. Hourigan, Certified Realtime Reporter,
     Official Court Reporter for the United States District Court,
17   Eastern District of Louisiana, do hereby certify that the
     foregoing is a true and correct transcript to the best of my
18   ability and understanding from the record of the proceedings in
     the above-entitled and numbered matter.

19

20                          *s/Terri A. Hourigan*
                            Terri A. Hourigan, CRR, RPR
21                          Certified Realtime Reporter
                            Registered Professional Reporter
22                          Official Court Reporter
                            United States District Court
23                          Terri_Hourigan@laed.uscourts.gov

24

25